IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| MYRON WILLS and JORDANN WILLS, individually and as representatives of the class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>vs.<br><br>REGENCE BLUECROSS BLUESHIELD OF UTAH,<br><br>        Defendant. | Civil No. 2:07-CV-616BSJ<br><br>**MEMORANDUM OPINION & ORDER**<br>**(Fed. R. Civ. P. 12(c))**<br><br>**FILED**<br>CLERK, U.S. DISTRICT COURT<br>October 23, 2008 (4:18pm)<br>DISTRICT OF UTAH |

* * * * * * * * *

The plaintiffs Myron and Jordann Wills are participant and beneficiary, respectively, under an employer-sponsored health benefit plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (2006). Defendant Regence BlueCross BlueShield of Utah ("Regence") provides health care benefits under the Plan pursuant to a group health insurance policy issued to Myron Wills' employer. The plaintiffs complain that Regence has wrongfully denied insurance coverage of residential mental health treatment services for adolescent and young adult beneficiaries under the Plan. They seek to recover reimbursement for expenses incurred during Jordann Wills' residential mental health treatment,[1] as well as declaratory and injunctive relief holding the policy exclusion relied upon by Regence in denying such reimbursement to be unenforceable under Utah insurance law, that

---

[1] Under ERISA's civil enforcement provision, a health benefit plan participant or beneficiary may sue "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B) (1999).

the denial of such coverage violates both ERISA and the terms of the insurance policy, and that Regence should be required to reimburse expenses for residential mental health treatment incurred by the plaintiffs and by a proposed class of similarly situated plaintiffs.[2]

Regence seeks judgment on the pleadings, arguing (1) that the plaintiffs' breach of contract claim is pre-empted by ERISA; (2) that plaintiffs cannot rely upon Utah Code Ann. § 31A-22-625 because that statute does not create a private cause of action; and (3) that Myron Wills has no standing to sue on a claim arising from treatment provided to Jordann Wills—a claim that Jordan Wills may properly assert in her own right. (Motion for Judgment on the Pleadings, filed November 30, 2007 (dkt. no. 15), at 3; Memorandum in Support of Motion for Judgment on the Pleadings, filed November 30, 2007 (dkt. no. 16) ("Regence Mem."), *passim*.)

The plaintiffs respond that their Amended Complaint in this case pleads claims for relief under ERISA as well as Utah insurance law and contract law, and that a claim under 29 U.S.C. §1132(a)(1)(B) to "'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan' . . . *is a breach of contract claim*." (Memorandum in Opposition to Motion for Judgment on the Pleadings, filed December 28, 2007 (dkt. no. 22) ("Pltfs' Opp. Mem."), at 5 (emphasis in original).) Thus, Regence's pre-emption theory has no bearing on these plaintiffs' claim.[3]

---

[2]On October 19, 2007, the plaintiffs commenced a second action seeking reimbursement for Jordann Wills' residential mental health treatment, alleging that by denying coverage, Regence has breached its fiduciary duties under ERISA and is liable pursuant to 29 U.S.C. § 1132(a)(1)(B). (*See* Complaint, filed October 19, 2007 (dkt. no. 1), in *Jordann Wills, et al., vs. Regence BlueCross BlueShield of Utah*, Civil No. 2:07-CV-0799 DAK (D. Utah).) That case was assigned to Judge Kimball, who has stayed further pretrial proceedings in that case pending a ruling on Regence's Rule 12(c) motion in this case. (*See* Order to Vacate Scheduling Order and Stay, filed June 25, 2008 (dkt. no. 12), in *Jordann Wills, et al., vs. Regence BlueCross BlueShield of Utah*, Civil No. 2:07-CV-0799 DAK (D. Utah).)

[3]The plaintiffs explain that the proposed plaintiff class may include some persons covered under health insurance policies not governed by ERISA, whose state law breach of contract claims concerning insurance coverage

(continued...)

They also deny that they sought to plead a private right of action directly under Utah insurance law, arguing instead that by its own terms, Regence's policy is governed by Utah law, "mak[ing] the laws of the State of Utah a term of the contract."  (*Id.* at 6.)

> Although Plaintiffs do claim in part that Defendant's categorical exclusion of payment for residential treatment services is a violation of Utah Code §31A-22-625, Plaintiffs do not claim this gives rise to a private right of action. Rather, Plaintiffs claim that because the parties to the insurance policies at issue agreed to be "governed by ERISA and the laws of the State of Utah," Defendant's "categorical exclusion of residential services provided to adolescents and young adults violates the express and implied terms of the [insurance policy]."  *See* Amended Complaint, ¶63(d).

(*Id.* at 7-8.)

Plaintiff Myron Wills further responds that he has standing to pursue the claim for reimbursement pleaded in the Amended Complaint because in addition to being a participant in the Plan, he was contractually obligated to assume financial responsibility for Jordann Wills' residential treatment and thus became personally liable for expenses left unpaid by Regence based upon its denial of coverage under the Plan.  (*Id.* at 8-10.)

In reply, Regence argues that the plaintiffs "disingenuously . . . mischaracterize" their own pleadings as asserting a claim under ERISA[4]—notwithstanding the fact that the Amended Complaint expressly invokes the jurisdiction of this court under 29 U.S.C. §1132(e)(1) and venue under 29 U.S.C. §1132(e)(2), and alleges that "ERISA and the laws of the state of Utah prohibit Regence from categorically excluding coverage for residential treatment services," and that "Regence's practice of denying coverage for residential treatment services violates the

---

[3](...continued)
would come within this court's supplemental jurisdiction.  (*See* Pltfs' Opp. Mem. at 6.)

[4](Reply Memorandum in Support of Motion for Judgment on the Pleadings, filed January 16, 2008 (dkt. no. 25) ("Regence Reply"), at 1.)

requirements of ERISA and the terms of the insurance policies at issue." (Amended.Complaint and Proposed Class Action, filed September 12, 2007 (dkt. no. 7), at ¶¶ 6, 7, 63, 68.)[5]

Regence further replies that the fact that its insurance policy is governed by Utah law does not operate to read that law into the terms of the policy such that a violation of a Utah statute becomes an actionable breach of contract. (Regence Reply at 3-5.) "The mere fact that Regence recognizes that its policy is subject to Utah law does not mean that it contractually agreed that plaintiffs could sue it for violation of the Utah insurance code." (*Id.* at 4.) Regence insists that enforcement of the Utah insurance statutes remains a purely administrative matter:

> The Utah legislature has expressly declared that the "insurance department . . . is expert in the field of insurance and able to enforce the Insurance Code effectively." Utah Code Ann. § 31A-1-102. With respect to the particular section of the insurance code invoked by plaintiffs, the statute makes clear that it is to be enforced by the Insurance Commissioner by "disapprov[ing]" insurance policies that do not comply with the law. Utah Code Ann. § 31A-22-625(5). Plaintiffs should not be allowed to circumvent the law under the guise of asserting a contract or ERISA claim.

(*Id.* at 5 (footnote omitted).)

Finally, Regence insists that plaintiff Myron Wills lacks standing under ERISA because he does not claim that there are any Plan benefits "due to him" under 29 U.S.C. § 1132(a)(1)(B); The fact that "a plan participant can always bind himself contractually to pay for medical expenses of an injured spouse or child" does not give him standing to sue under ERISA for reimbursement of those expenses; "'[T]he expenses incurred must be for an injury or illness to oneself, not to another person . . . .'" (*Id.* at 7 (quoting *Chapter v. Monfort of Colorado, Inc.*, 20 F.3d 286, 288 (7th Cir. 1994)).

---

[5]As to any proposed class plaintiffs that are covered by non-ERISA health insurance benefits, the asserted preemption of state law claims by ERISA would simply be irrelevant.

Regence's motion was argued on January 24th; the court took the matter under advisement, requesting that the parties prepare supplemental memoranda and furnish a copy of the pertinent insurance policy and benefit plan documents.  (*See* Minute Entry, dated January 24, 2008 (dkt. no. 26).)  On January 31st, plaintiffs' counsel submitted a copy of the Regence policy and rider, together with a copy of a memorandum opinion in *Wedekind v. United Behavioral Health*, Civil No. 1:07-CV-0026TS (D. Utah decided Jan. 24, 2008), discussing issues similar to those now before this court.[6]  On February 7th, Regence filed a supplemental memorandum arguing that the *Wedekind* opinion supports its assertion that Myron Wills lacks standing, and reiterating its argument that the plaintiffs cannot rely upon Utah Code Ann. § 31A-22-625 as a basis for their claim for health benefits under the Regence policy.[7]

**ANALYSIS**

Rule 12(c) provides that "after the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).  A motion for judgment on the pleadings filed by a defendant is examined by applying the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. See Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir.2000); *McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir.), *cert. denied*, 502 U.S. 894 (1991); *Bishop v. Federal Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir. 1990).  On a Rule 12(b)(6)

---

[6]( Supplemental Memorandum Regarding Defendant's Motion for Judgment on the Pleadings, filed January 28, 2008 (dkt. no. 27) ("Pltfs' Supp. Mem.").)  From the materials submitted, it appears that Exhibit "A" to the plaintiffs' Supplemental Memorandum is a copy of a summary plan description Booklet prepared by Regence to inform participants and beneficiaries of the benefits available to them under the health benefit plan, rather than the actual contract of insurance between Regence and the employer "group" sponsoring the Plan.  In their memoranda, the parties have treated the Booklet as equivalent to the contract, and at least for the purposes of this motion, the court will do so as well.

[7](Defendant's Supplemental Memorandum in Support of its Motion for Judgment on the Pleadings, filed February 7, 2008 (dkt. no. 28) ("Def's Supp. Mem.").)

motion, the court examines the legal sufficiency of the complaint, accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999); *Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir. 1998); *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

These days, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). That is, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). This "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

**ERISA Does Not Pre-empt Plaintiffs' Claim for Plan Benefits Under the Regence Health Insurance Policy**

As summarized above, the plaintiffs' Amended Complaint expressly invokes this court's jurisdiction under ERISA and seeks health expense reimbursement, declaratory and injunctive relief under ERISA based upon a Regence health insurance policy providing benefits under an employee welfare benefit plan governed by ERISA. This is not a diversity case. *Cf.* 28 U.S.C.A. § 1332 (2006). The plaintiffs allege that Regence wrongfully denied expense reimbursement for residential mental health treatment, breaching its contractual obligation to pay such expenses under the terms of its policy as governed by Utah insurance law.

While Regence may find it distressing that the plaintiffs' benefit claim has been pleaded in explicitly contractual terms, an insurance policy, after all, is a contract, and that contract remains the source of Regence's legal duty to pay health benefit claims made by participants and beneficiaries such as the plaintiffs.[8] In defining the scope of that duty, where are we to look, if not to the terms of the insurance contract itself?

> Our analysis is rooted in the concept that an insurance policy is a contract between two parties. *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210. If the language within the four corners of the policy is unambiguous, the parties' intent should be surmised from the "'plain meaning of the contractual language.'" *Id.* (quoting *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, 21, 133 P.3d

---

[8] As the Utah Supreme Court recently explained:

"An insurance policy is merely a contract between the insured and the insurer." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). As a result, we interpret insurance policies as we do contracts: "if the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 21, 133 P.3d 428 (internal quotation marks omitted).

*Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210, 1213. Under Utah law, "Insurance policies are generally interpreted according to rules of contract interpretation." *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685, 686; *see also Moore v. Prudential Ins. Co.*, 26 Utah 2d 430, 491 P.2d 227, 228 (1971) ("The application for and the issuance of an insurance policy is a matter of contract and is governed by the rules thereof.").

> 428).  Exclusions from coverage are interpreted no differently when the policy language is clear.  *See S.W. Energy Corp. v. Cont'l Ins. Co.*, 1999 UT 23, ¶ 13, 974 P.2d 1239 (holding that unambiguous language is given its ordinary meaning regardless of whether the specific provision works to affirm or deny coverage); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1275 (Utah 1993) (rejecting the argument that an exclusion was ambiguous and unenforceable because it was inconsistent with the expectation of coverage); *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 803 (Utah 1992) (finding that even though "an insurance contract is adhesive [that] is no reason, in itself, to enforce what might be found to be the reasonable expectations of the insured when those expectations conflict with the plain terms of the policy").

*Quaid v. U.S. Healthcare, Inc.*, 2007 UT 27, ¶ 10, 158 P.3d 525, 527-28.

Plaintiffs' claim for reimbursement of health care expenses thus raises a question of coverage under the Regence policy that proves to be inescapably contractual,[9] albeit one that finds its jurisdictional footing in ERISA, a federal statute.  ERISA, in turn, does not pre-empt the application of contract principles and the Utah law governing insurance contracts in resolving the issue of coverage of residential mental health treatment under the terms of the Regence policy.

**The Regence Insurance Policy Implicitly Incorporates Utah Insurance Law**

As the Utah Supreme Court has explained, "[i]t has always been recognized that a contract contains, implicitly, the laws existing at the time it is completed." *Beehive Medical Electronics, Inc. v. Industrial Com'n*, 583 P.2d 53, 60 (Utah 1978) (citing *Quagliana v. Exquisite Home Builders, Inc., Utah*, 538 P.2d 301, 308 (1975), and *Edwards v. Kearzey*, 96 U.S. 595, 601

---

[9]Questions of coverage under an insurance policy are resolved through application of contract law principles:

> Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole.  *See Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992).  Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible.  *See id.*  Insurers "may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."  *Alf*, 850 P.2d at 1275 (internal quotations omitted).

*Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685, 686

(1878) (holding that contracts embrace laws which affect their validity, construction, discharge, and enforcement)) (footnote omitted).  Where a contract "was made after the statute was enacted . . . the contract implicitly contains the . . . provisions of the Act." *Id.* at 60 n.5; *see Washington Nat. Ins. Co. v. Sherwood Associates*, 795 P.2d 665, 669 (Utah Ct. App. 1990) (stating that "a contract implicitly contains the laws existing at the time it was entered").

This concept of incorporating applicable existing law into a contract is not novel or unique to the law of Utah.[10]  As one noted commentary explains, "[e]xcept where a contrary intention is evident, the parties to a contract . . . are presumed or deemed to have contracted with reference to existing principles of law." 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 30:19, at 203-04 (4th ed. 1999) (footnotes omitted).

> Under this presumption of incorporation, valid applicable laws existing at the time of the making of a contract enter into and form a part of the contract as fully as if expressly incorporated in the contract.  Thus, contractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law.

*Id.* § 30:19, at 205-11 (footnotes omitted).  This principle embraces the common law of the

---

[10]*See, e.g.*, *Banner Health v. Medical Sav. Ins. Co.*, 216 Ariz. 146, 150, ¶ 15, 163 P.3d 1096, 1100 (Ct. App. 2007) ( "'It has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract.'" (quoting *Higginbottom v. State*, 203 Ariz. 139, 142, ¶ 11, 51 P.3d 972, 975 (Ct. App. 2002)); *O'Donnell v. Blue Cross Blue Shield of Wyoming*, 2003 WY 112, ¶ 12, 76 P.3d 308, 313 (stating that "'parties to a contract are presumed to enter into their agreement in light of existing principles of law'" (quoting *Union Pacific Resources Company v. Texaco, Inc.*, 882 P.2d 212, 222 (Wyo. 1994)); *Kirkwood v. CUNA Mut. Ins. Soc.*, 937 P.2d 206, 211 (Wyo. 1997)("These existing principles of law enter into and become a part of a contract as though referenced and incorporated into the terms of the agreement."); *Wiard v. Liberty Northwest Ins. Corp.* 2003 MT 295, ¶ 20, 318 Mont. 132, 137, 79 P.3d 281, 285 ("It is well established that laws existing at the time a contract is formed become part of the contract." (citing *Earls v. Chase Bank of Texas, N.A.*, 2002 MT 249, ¶ 12, 312 Mont. 147, 59 P.3d 364); *Cockrell v. Board of Regents of New Mexico State University*, 132 N.M. 156, 166, 45 P.3d 876, 886 (2002) ("'A contract incorporates the relevant law, whether or not it is referred to in the agreement.'" (quoting *State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130, 812 P.2d 777, 784 (1991)); *Primary Health Network, Inc. v. State of Idaho Dept. of Admin.*, 137 Idaho 663, 666, 52 P.3d 307, 310 (2002) ("Existing law becomes part of a contract, just as though the contract contains an express provision to that effect, unless a contrary intent is disclosed."); *Young Partners, LLC v. Board of Educ., Unified School Dist. No. 214, Grant County*, 284 Kan. 397, 404, 160 P.3d 830, 837 (Kan. 2007); *West River Bridge Co. v. Dix*, 47 U.S. (6 How.) 507, 532-33 (1848).

jurisdiction as well as "constitutional provisions, statutes, ordinances, and regulations, including provisions which affect the validity, construction, operation, effect, obligations, performance, termination, discharge, and enforcement of the contract." *Id.* § 30:19, at 211-14 (footnotes omitted).

"Contracts of insurance are no exception to this rule," and courts have "recognized the well-known principle that provisions of an insurance contract may arise from statute as opposed to the express writing contained in the document agreed to by the parties." *Brown v. Patel*, 2007 OK 16, ¶ 10, 157 P.3d 117, 121; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 438-39 (5th Cir. 2003) (insurance policy containing a provision to be "construed in light of Louisiana law" necessarily incorporated Louisiana law as a provision of the contract); *Buce v. Allianz Life Insurance Co.*, 247 F.3d 1133, 1147-49 (11th Cir. 2001) ("Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." (quoting *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993)); *Harris v. The Epic Group*, 357 F.3d 822 (8th Cir. 2004) (same with respect to application of Missouri state law); *Juliano v. The Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279, 289 (2d Cir. 2000) (same where insurance policy shall "be construed according to applicable state and federal law"); *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 700 (7th Cir. 1977) (holding that an Indiana insurance code provision was not preempted by ERISA and imputed the provision into an insurance policy that did not contain it). Indeed, "It is fundamental insurance law that '[e]xisting and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and, together with settled judicial constructions thereof, become a part of the contract as much as if they were actually incorporated therein.'" *Plumb v.*

*Fluid Pump Services*, 124 F.3d 849, 861 (7th Cir. 1997) (quoting 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 19:1, at 19-2 to 19-4 (3d ed. 1996) (footnotes omitted)); *see also FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.").

"Regardless of the language of a contract, 'it is always to be construed in the light of the . . . law then in force.'" *Higginbottom v. State*, 203 Ariz. 139, 142, ¶ 11, 51 P.3d 972, 975 (quoting *McCullough v. Virginia*, 172 U.S. 102, 112 (1898)). Therefore, "'where a contract is incompatible with a statute, the statute governs.'" *Id.* (quoting *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402, 678 P.2d 977, 983 (Ct. App.1984)); *see Plumb v. Fluid Pump Services*, 124 F.3d 849, 861 (7th Cir. 1997) (" Policy terms that are in conflict with statutory provisions are invalid."); *Williams v. UNUM Life Ins. Co.*, 113 F.3d 1108, 1113 (9th Cir. 1997) (stating that, on remand, the district court should determine whether insurance policy is in compliance with non-preempted insurance law; "[i]f not, the terms of [the insurance code section] must be read into the UNUM policy"); *Ruble v. UNUM Life Ins. Co.*, 913 F.2d 295, 297 (6th Cir. 1990) ( "The Michigan Insurance Code clearly regulates insurance. If . . . the Insurance Code operated to write UNUM's coordination of benefits provision out of the group insurance policy, . . . nothing in ERISA would prevent the insurance policy from being enforced in its statutorily modified form."); *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993) (noting that non-preempted state statutes govern interpretation of insurance policies).

Of course, "an intention not to adopt existing law may be manifested by a contractual provision to such effect," *Williston on Contracts* § 30:19, at 204-05, but it appears that no such intention was manifested in this instance. To the contrary, the Regence policy expressly provides

that "[t]he Contract will be governed by and construed in accordance with the laws of the United States and by the laws of the State of Utah without regard to its conflict of law rules." (Exhibit "A" to Pltfs' Supp. Mem. at 64 (RWillsClass001023).) Moreover, the Regence policy expressly contemplates adjusting the administration of benefit claims to take into account changes in the governing law: "Where the law or judicial interpretation of the law changes over time, the administration of benefits for otherwise identical claims may differ, unless such change is expressly made retroactive." (*Id.*)

Counsel has pointed to nothing in the policy that was clearly intended to exclude Utah Code Ann. § 31A-22-625 or any other provision of Utah insurance law from incorporation into the terms of the policy as part of the governing law. Instead, counsel for Regence insists that the policy's "acknowledgment of the governing law does not entitle plaintiffs to assert a claim that Regence violated § 31A-22-625 of the Utah Insurance Code (under the guise of an ERISA claim for benefits) because no such private right of action exists." (Def's Supp. Mem. At 3 n.1.)

But this argument misses the point. The plaintiffs may bring a claim for Plan benefits under 29 U.S.C. § 1132(a)(1)(B), benefits that ostensibly are defined by the terms of the insurance contract between Regence and the participants' employer, and the decisive issue is what benefits are available to plaintiffs *under the terms of the contract*, including the provisions of Utah law incorporated into the contract itself. If a provision of the agreement between Regence and the employer conflicts with the requirements of Utah Code Ann. § 31A-22-625, then the statute prevails in *defining the terms of the contract* for purposes of the plaintiffs' claim for benefits under ERISA.

The court gleans little helpful guidance on this issue from Regence's dogged insistence

that Utah Code Ann. § 31A-22-625 is not before the court because no independent private cause of action exists under the statute. The plaintiffs' health benefit plan and its underlying insurance contract *are* before this court—as is Utah insurance law, expressly and impliedly incorporated as part of that contract.

To the extent that Regence's Rule 12(c) motion seeks to dismiss the plaintiffs' claims for health expense reimbursement by excluding the Utah statute from the court's consideration of the decisive issue raised by their claims, it misapprehends the governing legal principles, and must be denied.

**Plaintiff Myron Wills has Made Plausible Jurisdictional Allegations re: Standing**

Regence contends that plaintiff Myron Wills lacks standing to bring a claim for reimbursement of health care expenses incurred through residential mental health treatment received by his daughter, plaintiff Jordann Wills, because 29 U.S.C. § 1132(a)(1)(B) affords Myron standing only as to claimed benefits "due to him" under the Plan. (Regence Mem. at 10 ("Myron Wills is not suing for 'benefits due to him,' and therefore cannot state a claim against Regence").)[11] Regence submits that as an adult beneficiary of the Plan, Jordann Wills has standing as a plaintiff in her own right to seek benefits due to her as reimbursement of her own expenses, and the fact that Myron wills may have personally assumed financial responsibility for those expenses does not afford him a claim under ERISA.

---

[11] 29 U.S.C. § 1132(a)(1) provides:

A civil action may be brought—
(1) by a participant or beneficiary-(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . .

Section 502(a) of ERISA, 29 U.S.C. § 1132(a) (1976), provides that a civil action may be brought under ERISA by a plan "participant," "beneficiary," or "fiduciary," or by the Secretary of Labor.[12]  To be a "participant," one must be an "employee or former employee of an employer, or any member or former member of an employee organization." 29 U.S.C.A. § 1002(7) (1999). A "beneficiary" is "a person designated by a participant or by the terms of an employment benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8) (1999); *see Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1158-59 & n.10 (10h Cir. 2004).

The list set forth in § 1132(a) limits those parties who have independent standing to sue an ERISA plan.  *See, e.g., Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988) (holding that parties not listed in § 1132(a) do not have independent standing to sue an ERISA plan).  For example, in the *Wedekind* decision furnished to the court by counsel, the health care recipient's mother was neither a plan participant or a beneficiary who was had incurred the claim for benefits at issue under 29 U.S.C. § 1132(a)(1)(B).

Here, Myron Wills is conceded to be a Plan participant and Jordann Wills a Plan beneficiary under § 1132(a).  But § 1132(a)(1)(B) is not all that is necessary to confer standing upon them.  They must also satisfy the constitutional prerequisites for invoking the court's subject matter jurisdiction under Article III.  *See Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 197-200 (2d Cir. 2005).[13]  As other

---

[12]Section 502(e), 29 U.S.C. § 1132(e)(1), also confers jurisdiction on federal courts to hear these actions.

[13]As the Tenth Circuit has explained, "Those who seek to invoke the jurisdiction of the federal courts must satisfy the Article III requirement of having an actual case or controversy." *Faustin v. City and County of Denver*, 268 F.3d 942, 947 (10th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).  Plaintiffs must "demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues . . . ." *Lyons*, 461 US. at 101 (internal quotations omitted).

(continued...)

courts have noted, "Status as a plan participant which provides statutory standing under ERISA section [§ 1132(a)] . . . does not necessarily provide constitutional standing." *Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596, 621 (D.N.J. 2003).

Although courts have recognized that a plaintiff may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of actual harm, *see Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003), requests for monetary relief under ERISA are different; they require a plaintiff "to demonstrate individual loss." *Id.* In other words, to have standing to seek reimbursement of health care expenses under ERISA, plaintiff Myron Wills must demonstrate, among other things, that he has suffered an injury-in-fact, and thus has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which . . . court[s] so largely depend[ ]." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *cf. Harley v. Minnesota Mining and Manufacturing Co.*, 284 F.3d 901, 906 (8th Cir. 2002) ("[T]he limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan." (emphasis in original)).[14]

---

[13](...continued)
  Plaintiffs must show they have sustained or are immediately in danger of sustaining some direct injury, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical. . . . To establish standing, plaintiffs must show injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision. . . .

*Faustin*, 268 F.3d at 947 (citations omitted); *see also Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998)..

[14]The same is true of his Article III standing as a representative of a proposed plaintiff class:

(continued...)

courts have noted, "Status as a plan participant which provides statutory standing under ERISA section [§ 1132(a)] . . . does not necessarily provide constitutional standing." *Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596, 621 (D.N.J. 2003).

Although courts have recognized that a plaintiff may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of actual harm, *see Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003), requests for monetary relief under ERISA are different; they require a plaintiff "to demonstrate individual loss." *Id.* In other words, to have standing to seek reimbursement of health care expenses under ERISA, plaintiff Myron Wills must demonstrate, among other things, that he has suffered an injury-in-fact, and thus has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which . . . court[s] so largely depend[ ]." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *cf. Harley v. Minnesota Mining and Manufacturing Co.*, 284 F.3d 901, 906 (8th Cir. 2002) ("[T]he limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan." (emphasis in original)).[14]

---

[13](...continued)
  Plaintiffs must show they have sustained or are immediately in danger of sustaining some direct injury, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical. . . . To establish standing, plaintiffs must show injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision. . . .

*Faustin*, 268 F.3d at 947 (citations omitted); *see also Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998)..

[14]The same is true of his Article III standing as a representative of a proposed plaintiff class:

(continued...)

In this instance, plaintiff Myron Wills has alleged an individual injury-in-fact flowing from his payment of part or all of the residential mental health care expenses incurred by his daughter.  (*See* Amended Complaint and Proposed Class Action, filed September 12, 2007 (dkt. no. 7), at ¶ 43 ("Myron, Jordann's father, and Jordann's mother have paid the medical expenses incurred for Jordann at CFC and they seek reimbursement of those expenses that they have incurred and paid.").)  In essence, the gravamen of the Amended Complaint is that Myron Wills claims that expense reimbursement is "due to him" under § 1132(a)(1)(B) because his payment of those expenses in the first instance subrogates him to Jordann Wills' § 1132(a)(1)(B) claim for Plan benefits.[15]

Regence points to *Chapter v. Monfort of Colorado, Inc.*, 20 F.3d 286, 287, 288 (7th Cir. 1994), as authority for the assertion that Myron's assumption of financial responsibility for Jordann's health care expenses does not confer standing upon him to sue Regence under §

---

[14](...continued)
The Supreme Court has held that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).  Moreover, the named class plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Warth*, 422 U.S. at 502, 95 S.Ct. 2197; *see also Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (noting that Article III standing requirements are "no less true with respect to class actions than with respect to other suits"); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing . . . ."); *Allee v. Medrano*, 416 U.S. 802, 828-29, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share.  Standing cannot be acquired through the back door of a class action.") (Burger, C.J., concurring in the result in part and dissenting in part).

*Merck-Medco Managed Care*, 433 F.3d at 199.

[15]Counsel asserts that "at the very least, as a plan participant, Myron has standing 'to clarify his rights under the terms of the plan.'" (Pltfs' Opp. Mem. at 8 (quoting 29 U.S.C. § 1132(a)(1)(B)).)

1132(a)(1)(B): "'[T]he expenses incurred must be for an injury or illness to oneself, not to another person, even if the other is another plan participant.'" (Regence Mem. at 10.) Yet in that case, the plaintiff participant sought reimbursement for expenses incurred by his wife, who was injured as a result of her own participation in criminal conduct, namely driving while intoxicated—coverage of which was expressly excluded by the terms of the plan:

> Even literalists abandon literalism when necessary to avoid absurdity. Unless the plan is limited to medical expenses incurred for services rendered to plan participants, rather than to persons with whom plan participants have a contractual or other legal link, it would cover anyone whom a participant wanted it to cover. We go further: the expenses incurred must be for an injury or illness to oneself, not to another person, even if the other is another plan participant. Mrs. Chapter, not her husband, was the plan participant who incurred the medical expenses for the injuries she sustained in the accident, and she, and therefore her husband as well, is barred from reimbursement for those expenses by her participation in criminal activities.

20 F.3d at 288. The *Chapter* panel was grappling with a problem very different from that presented in this case.[16]

Here, the central question is whether the Regence policy covers the residential mental health care expenses incurred by Jordann Wills and paid by her father, who now seeks reimbursement for those expenses actually paid on Jordann's behalf. There is no effort in this case to circumvent an express policy exclusion that plainly applies to Jordann but not to Myron, as was the case in *Chapter*. If it is determined that the Regence policy should be construed to

---

[16]*Chapter* has rarely been cited by other courts and it is not at all clear that Judge Posner's "injury or illness to oneself" formulation has worked its way into the law of ERISA beyond the Seventh Circuit.
    Regence cites to one of those rare cases, an unreported opinion in *Ray v. PPOM, L.L.C.*, 2005 WL 1984470 (E.D. Mich. 2005), in which the court denied standing to a former plan participant who sought to bring an ERISA expense reimbursement claim on her son's behalf. The opinion gives no indication whether the plaintiff had actually paid the expenses in question, or was simply attempting to assert her son's claim *jus tertii*. The court noted that the plaintiff's son "was not a minor at the time of the accident, thus Plaintiff was not rendered liable for his debts." The ruling in *Ray v. PPOM, L.L.C.* thus sheds little light on the issue at hand.

cover those expenses, Regence essentially concedes that Jordann would be entitled to reimbursement. By extension, Myron Wills may be subrogated to Jordann's claim for reimbursement, at least as to expenses he has actually paid on her behalf.

Counsel cites to no Supreme Court or Tenth Circuit authority deciding whether a plan participant may become subrogated to his or her child's claim for reimbursement as a plan beneficiary, and this court has found none.

Some courts have ruled that an insurer or health care provider subrogee of a plan beneficiary also has standing to sue for health benefits under ERISA. *See, e.g., Gorum v. Louisiana Hospt. Ass'n Employee Benefit Trust*, 664 So.2d 662, 664 (La. Ct. App. 1995); *Allstate Insurance Co. v. Operating Engineers Local 324 Health Care Plan*, 742 F.Supp. 952, 956 (E.D. Mich.1990) ("As a subrogee of an ERISA participant, i.e., plaintiff's insured, the insurer in this Court's opinion has standing to sue under section 502(a)." (citing *Misic v. Building Service Employees's Health*, 789 F.2d 1374, 1374, 1378-1379 (9th Cir.1986); *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289-1290 (5th Cir.1988)). If that is so as to insurers and health care provider subrogees, why not as to participant-parent subrogees as well?

This court concludes that "under the forgiving standard for Rule 12(c) motions, it was possible that Plaintiff could allege facts sufficient to demonstrate his standing," *De Walshe v. Togo's Eateries, Inc.*, 567 F. Supp. 2d 1198, 1204 n.3 (C.D.Cal. 2008), that is, that Myron Wills has pleaded a plausible claim of injury-in-fact concerning reimbursement "due to him" as subrogee of Jordann Wills' claim as a result of his own payment of those expenses on her

behalf.[17]

**CONCLUSION**

At this stage, Myron Wills has pleaded at least a plausible claim seeking reimbursement under § 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B), for out-of-pocket residential mental health care expenses incurred by his beneficiary daughter and paid by him in the first instance. The central question of the scope of coverage of those expenses under the terms of Regence's health insurance policy remains at issue; Regence's Rule 12(c) motion did not squarely address that question in light of Utah Code Ann. § 31A-22-625, and this court makes no ruling on that substantive issue at this time.[18]

Neither plaintiff's claim is pre-empted by ERISA, each claim having been pleaded under ERISA itself, invoking the jurisdiction of this court under 29 U.S.C. § 1132(e) to seek reimbursement of expenses under the terms of the health insurance contract that defines the Plan benefits. Plaintiff Jordann Wills' standing to bring such a claim is already conceded, and plaintiff Myron Wills' standing, a least as a subrogee of his daughter's claim under § 1132(a)(1)(b), proves to be plausible at this stage of the proceeding, warranting the denial of Regence's Rule 12(c) motion on that ground as well.

For the foregoing reasons,

---

[17] "Whether a claimant has constitutional standing is a threshold jurisdictional question," *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008), and as such, may be a more appropriate subject for a Rule 12(b)(1) motion to dismiss. Even so, the pleadings would be construed in favor of the plaintiffs. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("'For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))).

[18] Nor does the court express any view at this time as to the certification of the proposed class action.

**IT IS ORDERED** that Regence BlueCross BlueShield of Utah's Motion for Judgment on the Pleadings (dkt. no. 15), is hereby DENIED.

DATED this 23 day of October, 2008.

BY THE COURT:

/s/ Bruce S. Jenkins

BRUCE S. JENKINS
United States Senior District Judge